May it please the court, I would ask to reserve two minutes for rebuttal. This case exemplifies the dovetailing of the Speedy Trial Act and the Interstate Agreement on Detainers. And in this case, what happened was that on July 3, 2000, Mr. Rojas-Velasquez was charged with a state crime. In October 2000, the INS came and questioned him at the Fresno County Jail. In a month, an indictment was filed in the federal court using INS agents as grand jury witnesses. In January 2001, his parole was revoked, which in the Speedy Trial Act means that he was, in fact, in state custody at that time. At no time did the government serve Mr. Rojas-Velasquez or lodge a detainer with him which would permit him to request trial. They did not lodge a USMS detainer. What they did in February 2001, he entered a guilty plea to the state charge that brought him there. And in that plea, he got four years for the actual assault and five years for his priors. In April 2001, the INS came and lodged its detainer, which did not permit him to request a trial. That was a violation of immigration law, detainer. Correct. Had nothing to do with the criminal charge. Well, you know, that ‑‑ I understand that argument, but I would say that since the criminal charge is brought by the INS, and since the government is under an obligation to file a detainer timely, that it ‑‑ and since this INS agent went and when he was ‑‑ because he had fully confessed in his statement, and they indicate on their papers, at least, that he was told that he was facing criminal prosecution. And he specifically asked the INS officer, am I going to be prosecuted? And the INS officer said, I don't think so. You're doing nine years. Now, already in an INS ‑‑ an indictment had already been filed. Your client pleaded guilty? Pardon me? Your client was convicted or pleaded guilty? Yes. Pleaded guilty? Pleaded guilty. Conditional guilty plea? No. Why are we talking about this? Well, I didn't set it for oral argument. I mean, do we have jurisdiction to consider anything that happened prior to the guilty plea if you have a non‑conditional guilty plea? Your Honor, the government hasn't objected. I believe that it's way ‑‑ Conditional. Okay. Well, I'll sit down then. I mean, do you have an answer to that? Pardon me? Do you have an answer to that? No, Your Honor. What we had been doing ‑‑ If there's no condition, you didn't reserve this. This is not one of those things where you reserve this and plead guilty, I reserve this issue for appeal. Right. There's nothing like that. Well, that was everybody's understanding. That the only way ‑‑ Is it on the record? Is it on the record? Did he say, I reserve for appeal? I reserve this issue? I don't recall. I don't recall. I would not represent to the court that that was what happened. But what we got ‑‑ what we've been ‑‑ what happened in this case was we were given a series of offers. Initially, we got a 30‑month offer. I filed ‑‑ I mean, this is all very interesting, but unless you can point to something on the record where you preserved the issue for appeal, it gets washed out by a non‑conditional guilty plea. Well, I cannot point to something on the record because I didn't even review the issue. Okay. Well, maybe government counsel can point to something. I don't know. Would you like me to continue? Up to you, but I ‑‑ unless you can point to something on this, I'm not sure of the point. We can talk about the download departure if you want. I don't know. I mean, this is my ‑‑ this is where I get off the bus from this one. Well, that's ‑‑ If you don't have anything. Even if there were some right to appeal on this issue preserved, there isn't any obligation for the government to lodge a detainer at any particular time, is there? Well, what it says is that they should lodge it in a reasonable time. I don't think that within a year, that a year ‑‑ nearly a year after the indictment is reasonable. Particularly given the ‑‑ Do you have any authority for that? No, I have none. When they got around to it, the matter was settled within the 180‑day window. Absolutely. They brought them within two days of filing their detainer. Mr. Rojas Velazquez requested that he be able to ‑‑ he wanted to plead very early. He requested the ability to plead. I went on medical leave. He didn't like the offer that was presented because he was hoping to get concurrent time or have that as an option. Initially, the prior U.S. attorney had indicated to me that she might offer six months. She was going to discuss it with the agent. And then she did not do so. It was on that basis that we ended up pleading straight up to the indictment without reservation, I don't believe, under Rule 11. And I'll submit it. Thank you. Good morning. May it please the Court. David Gappa for the United States. How are you? Fine, thank you. Is there anything that you heard this morning that your response is inadequate to cover the new brief? I don't believe so. And I think the Court has asked good questions about why this would be before it. Jurisdictionally, I don't think there is anything that the Court could consider. To answer the question about whether it was a conditional guilty plea, no, it was not. The record of the change of plea is in the excerpt of record at pages 90 to 101. When the Court reviews that, you'll see that it was a straight-up plea. There was no reservation of any rights. Thank you. You're welcome. The case is argued in the fifth minute. The next argument in the United States v. Rodriguez-Aguilera. Counselor? Good morning, Your Honor. Mark St. Angelo for the United States. May it please the Court. And I would like to reserve two minutes for rebuttal. Is there a case where the government is on the blue brief? Yes, it is, Your Honor. It must feel good. I don't know that I would say that it feels good at all. No, it must feel different. It does feel different. I think what's at issue in this case really is just whether the Court is going to follow the plain language of the interstate agreement of detainers and the Supreme Court's decision in facts. It wants to be delivered to the prosecuting officer and the appropriate court. That's correct, Your Honor. And here you're saying it may have been delivered to the prosecuting officer but not the appropriate court. That's exactly right. Judge, we didn't address that. He just said the Court finds the procedural requirements were not followed. Was this argument that you're making us today made to him? Yes, it was, Your Honor. Did he ever say anything about it? He did not really address it at all. His concern was primarily that he felt that because of the prison authority's failure to do what they were supposed to have done, that the individual's rights had been violated and therefore he decided to dismiss. He also dismissed with prejudice, which we believe was inappropriate because he did not do an analysis of the factors that he was supposed to. In particular, he didn't consider the seriousness of the crime. There's nothing in the record that really indicates he thought about that. And he also didn't really talk, although he talked in terms of the impact on the IAD of allowing prison officials to essentially do nothing, he didn't make any findings or then there was no evidence from which he could conclude that dismissing this case would have any impact on the prison officials at all. And that's another problem, I think, with the case. They don't care because they're state officials? Well, it's unclear whether they care because they certainly didn't seem to do anything in this case. They do have, as the evidence in the record shows, they did have regulations that require them to comply with the IAD. They just didn't follow them in this instance. They resort to the marshal? Yes, all they did was basically return the form to the marshal in a self-addressed envelope that the marshal had given them. Do you think this has to be resolved in a civil action between the defendant and the prison officials? I think that there very likely could be a cause of action of that nature. Of course, in this case, the individual has since been released from state custody and has been deported. Whether he's likely to bring such an action, I think, is actually highly unlikely. But I think that the possibility is... I'm sorry, I didn't understand what you just said. Did you say he has been deported? Yes, he has. There was a motion to dismiss his moot and that motion was denied because it's still possible that if he comes back into the country again illegally that if this case, if Judge Ware's decision were reversed, he could be re-indicted on the original charge as well as on any subsequent charge for coming in again. Okay. If the Court has no further questions... Okay, we'll hear from the defendant. Thank you. Oh, that one was lawyer. Good morning. May I please the Court? Jay Rorty for Mr. Rodriguez-Aguilera. I would characterize this case somewhat differently than Mr. St. Angelo. I believe the question faced by the Court is whether the doctrine of substantial compliance survives the decision in Fex v. Michigan. Yeah, cause delivered means actual delivery. That's correct. Your Honor, held in U.S. v. Collins, the correct interpretation of Fex v. Michigan was that actual delivery to both the Court and the prosecution was required. That case occurred in 1996. However, in 1999, this Court decided in U.S. v. Johnson that the doctrine of substantial compliance did apply in a case in which the defendant, the federal public defender mailed a letter to the district court indicating the defendant's desire for a speedy trial. That case left open the doctrine of substantial compliance following Fex v. Michigan. Even assuming that you're on sound legal ground, how could this possibly be substantial compliance? Through a combination of the delivery of the U.S. Marshals Form 17 to the marshals and the prison officials and the inaccurate and misinformed content of U.S. Marshals Form. It is correct that Mr. Rodriguez-Aguilera took less steps than the inmate in U.S. v. Johnson and many of the other cases which have addressed the issue of substantial compliance. Essentially, his compliance consisted of filling out the Form 17 and trusting the prison officials to deliver that form appropriately. What is distinguishable factually from U.S. v. Johnson is that after U.S. v. Johnson, the U.S. Attorney and the Marshals Service amended the form to address one of the concerns raised by the Johnson court. That was to add a requirement that the prison officials forward the form to the court. In this case, they did not. Wasn't there also a requirement for your client to follow up? There was a statement in the U.S. Marshals Form 17 which directed him to make periodic inquiry of the prosecution. Is there any evidence that he did that? No, there is not. There is some evidence to the contrary by the declaration of a prison official that they know of no follow-up inquiry. What I would point out to the court is that the U.S. Marshals Form contained that advisement to Mr. Rodriguez-Aguilera but the interstate agreement on detainers  There is no language within the act that requires... But it does make it harder to argue that we ought to depart from the clear language of the statute because somehow he had some equitable alliance or something of that sort that the U.S. Attorney would do what he was supposed to do. I think rather that the prison officials would do what they were supposed to do. Well, it was a failure really on both parts. It took the U.S. Attorney 18 months or something to file something So if if things hadn't gotten balled up in the U.S. Attorney's office it would have gotten to the court sooner probably. It was sort of a double failure. That's correct. But nevertheless as a matter of equity it makes your client's case less strong that he had this warning that he didn't do anything about it. I think what mitigates against that conclusion is that Mr. Rodriguez-Aguilera is monolingual in Spanish. The evidence indicates that the form was translated to him and that the form was not provided for him to keep and he had no means of communication with the court and the prosecutor in English. Prison officials took no additional steps to enable him to follow the directions he was given by the form. I should add that the form instructs him to make periodic inquiry of the court and the prosecution but does not say to whom he should make that inquiry. There is no address, there is no phone number, there is no name and again he is monolingual in Spanish. To place the burden on him to comply to a greater extent than completion of the form I think is an unrealistic consideration of the circumstances in which he and other inmates find themselves. Okay. Nothing further? Nothing further. Thank you. Would the court like me to address the issue of prejudice? I think not. Thank you. Case is argued. If the court has no further questions, I'll submit. Thank you. Case is argued. We'll stand submitted.
judges: B.fletcher, Kozinski, Trott